Hosteen SAKEZZIE and Thomas Billy, in their own behalf and as representatives of and members of the class of persons who are Navajo Indians residing within the Aneth Extension of the Navajo Indian Reservation in San Juan County, Utah, Plaintiffs,

v.

UTAH INDIAN AFFAIRS COMMISSION and its members, Beverly S. Clendenin, Chairman, Harold Drake and Don Smith, members of said Commission, Defendants.

No. C-55-61.

United States District Court
D. Utah,
Central Division.
Aug. 25, 1961.

Milton A. Oman, Oman & Saperstein, Salt Lake City, Utah, for plaintiffs.

Ronald N. Boyce, Asst. Atty. Gen. of Utah, for defendants.

CHRISTENSON, District Judge.

This case was tried to the Court without a jury on May 31 and June 1 and 2, 1961. Plaintiffs appeared in person and by their attorney Milton A. Oman. Defendants appeared by Ronald N. Boyce, Assistant Attorney General for the State of Utah. The case having been submitted for decision and the Court having announced in open court its tentative views, and now being fully advised, the Court now makes and enters the following

### Findings of Fact.

1. The plaintiffs are residents and citizens of the State of Utah, residing on the "Aneth Extension" of the Navajo Indian Reservation, in San Juan County, State of Utah. This action arises under the laws of the United States. The amount in controversy exceeds the sum of $10,000, exclusive of interest and costs.

2. In 1933 the Congress of the United States enacted a statute dated March 1 of that year, being Public Law No. 403, 47 Stat. 1418, which added an area within the State of Utah as the "Aneth Extension" to the north end of the existing Navajo Indian Reservation. After particularly describing this addition, the statute provided that the land was "permanently withdrawn from all forms of entry or disposal for the benefit of the Navajo and such other Indians as the Secretary of the Interior may see fit to settle thereon." The statute contained also the following further pertinent provisions:

> " * * * Should oil or gas be produced in paying quantities within the lands hereby added to the Navajo Reservation, 37½ per centum of the net royalties accruing therefrom derived from tribal leases shall be paid to the State of Utah: Provided, [t]hat said 37½ per centum of said royalties shall be expended by the State of Utah in the tuition of Indian children in white schools and/or in the building or maintenance of roads across the lands described in Section 1 hereof, or for the benefit of the Indians residing therein."

This statute continues in full force and effect.

3. Since the enactment of the abovementioned statute, and particularly during the last ten years or so, oil and gas in substantial quantities have been discovered within this area, and substantial sums of money have been earned, and are currently being earned, as net royalties from the production and sale of this oil and gas.

4. In 1959 the State of Utah enacted a statute to implement the above-mentioned Federal statute. See Chapter 22, Title 63, U.C.A.1953. Thereafter, the

Governor of the State of Utah appointed a commission of three persons, who are the individual defendants in this case, which commission was created by the State statute to administer the funds in question. This commission is known as the Utah State Indian Affairs Commission, and is also a defendant herein. Under its appointment and pursuant to the State statute it has the duty to manage and expend the said 37½ per cent fund for the purposes and under the terms and conditions provided in the Federal act above mentioned, there being no conflict between the Federal and State statutes. Substantial sums of money have been paid to the defendant commission as the 37½ per cent fund from oil and gas royalties, the money already received totaling approximately $3,000,000.

5. Plaintiffs and those whom they represent live on the Aneth Extension in an arid desert in which no permanent livestreams of water exist and in which there are only small and widely separated springs for the use of the inhabitants and their livestock. The families there usually consist of the parents and an average of six children. The average income per family is approximately $240 per year, which is earned almost entirely from the few head of livestock which they own and graze upon these desert lands. The livestock owned averages about twenty-five sheep and ten cattle per family. This number of livestock reasonably requires more forage than is available on the lands occupied by plaintiffs and those whom they represent. Their range is suitable only as winter range, and there is no proper summer range within the Aneth Extension. They have been herdsmen from time immemorial and are adept in the care of livestock. Precipitation in this area is insufficient for the production of cultivated crops and practically no possibilities exist for irrigation water.

Plaintiffs and those whom they represent live in mud hogans with dirt floors and with no utilities. They exist under common conditions of malnutrition and in such poverty as, measured by white man's standards, amount to abject and extreme want. They do not live in towns or communities, but rather their hogans are widely separated from each other, and they graze their livestock on land surrounding their hogans. The diet of these Indians consists primarily of meat which they secure from the animals which remain in their herds after they have sold what is deemed essential to provide funds for the other urgent necessities of life.

The Extension is divided into two disconnected segments. The one, referred to as the Ol Jato area, is located between the Arizona State Line and the San Juan River and lies westerly from the town of Mexican Hat, Utah, to the Colorado River. It is about 85 miles by road west of the other area, which is known as the Montezuma Creek portion of the said Extension. Only Navajo Indians live within the Montezuma Creek area, and Navajo Indians make up about 90 per cent of the population of the Ol Jato area, the remainder being Piutes.

6. The defendants heretofore have expended and have claimed the right to expend from the said 37½ per cent fund coming into their hands the following amounts for the following purposes:

(a) About $78,000 to pipe water from the lands upon which plaintiffs and those represented by them live within that segment of the Aneth Extension known as Ol Jato portion, into a parcel of patented lands owned by a white man which expenditure was for the purpose of improving an existing water system serving a Seventh-Day Adventist Hospital which is available to the Indians who live in the Ol Jato area and which also is available to all other persons in that area, including Indian people who are no part of the plaintiff group.

(b) Twenty-seven thousand dollars paid to O. Frost Black, a white man of Blanding, Utah, for the construction of an airport and connecting road and for the replacement of a washed-out reservoir dam located in a wash in the Ol Jato area.

(c) Two thousand one hundred twenty-five dollars paid to the Utah State Land Board as rent for office space.

(d) Salaries and wages to Commissioners, defendants herein, and to commission employees, in the amount of $7,750.

(e) Travel expenses of the defendants in the amount of $3,990.

(f) Printing, telephone and incidental expenses in the amount of $347.

7. The defendants are about to expend, and claim the right to expend, additional money from said 37½ per cent fund in the following amounts and for the following purposes and will do so unless the Court otherwise determines and directs:

(a) One hundred twenty-five thousand dollars to be given to the United States Public Health Department for the purpose of locating the isolated springs within the Aneth Extension and for the purpose of determining what may be done to improve the quality and utilization of these waters.

(b) Five hundred thousand dollars to build a portion of a hard-surface road connecting the towns of Blanding, Utah, and Shiprock, New Mexico, said portion lying outside the boundaries of said Extension.

8. Plaintiffs have, through counsel, requested defendants to expend part of the said funds for the purchase of summer range and ranches to be used to expand and increase the livestock operations of plaintiffs and of those they represent and to "round out" a year-long livestock operation. It is proposed that the present range be used for winter grazing and the purchased high-elevation ranges be used for summer grazing, and that purchased ranches be used also to produce feed and forage to supplement and protect the integrated livestock operation. Defendants, thus far, have declined to make such a purchase because they have not been convinced that the Indians could profitably operate such properties and by reason of opposition on the part of various white men to activities of Indians outside of the present reservation.

9. Defendants have caused a field representative of the Indians Affairs Commission to be assigned to the area with a view to ascertaining the needs of plaintiffs and those represented by them and to investigate and cooperate in the execution of projects for their benefit. The defendants from time to time have visited the area in order to better enable them to administer said funds. The defendants have consulted at the Aneth Chapter House with Indians who reside in the Aneth Extension, and have made contact with members of the Tribal Council of the Navajo Indian Tribe, including its Chief, Paul Jones, and with members of the United States Bureau of Indian Affairs so as better to determine in what manner the expenditure of funds could be made. In addition, prior to the time the Utah State Indian Affairs Commission was created, a study of conditions in the area and the desires and needs of those residing therein was made and submitted to the Governor of the State of Utah, which study has been relied upon to some extent by the defendants in making expenditures from said fund. But the defendants have taken no effective steps to ascertain the particular identity of plaintiffs and those represented by them and have made no census of them, and have made no adequate study of their area, their living conditions, or their needs; and defendants have taken no adequate and effective steps to ascertain the desires and ideas of those for whose benefit the said fund was specifically intended. The defendants have placed excessive reliance upon Tribal officers whereas the fund was not intended for the benefit of the Navajo Tribe as a whole and the interest of the tribe as a whole in some respects has been in conflict with those of the Indians residing upon the Aneth Extension. One meeting of Indians on the Aneth Extension was arranged by officials of the Navajo Tribe, but defendants were not in a position to know whether any of

plaintiffs or those represented by them were present or had been invited. A written petition was drafted at this meeting which was forwarded to the defendants, purporting to contain an approval or request for defendants to expend the funds substantially in the manner in which they had been expended and in accordance with the plans of the defendants, but there was no showing that the purported signatures were those of the Indians having an interest in said funds, or that any of the persons named thereon were members of plaintiffs' group.

10. Representations have been made to plaintiffs and those whom they represent purporting to be the views of the defendants that said funds could be expended only for roads and school tuition; and the view and policy of the Commission has been uncertain as to whether the expenditure of money from said fund should be for the exclusive benefit of Indians settled on the Extension or whether it might be sufficient if such expenditures were for the primary or the substantial benefit of said Indians. As late as the trial the argument has been advanced by defendants that any expenditure by them from said fund would be justifiable so long as it benefited the Indians resident upon said Extension, even though it were intended to, and did, benefit others primarily.

11. Plaintiffs and those represented by them are without adequate opportunity in the area in which they live to creatively occupy themselves because of the type of country in which they are confined and the primitive nature of its settlement. There is much idleness among them, although considerable manpower is available for the type of tasks for which they are suited. They are able to do manual labor and to handle livestock and horses and many of them are able to operate automobiles, trucks, tractors and other motor-driven equipment. Defendants have made no requirement that those resident upon the Extension be employed whenever possible in projects financed from said fund although

they have had the policy of employing Navajo Indians when considered feasible by their representatives actively supervising the projects.

12. Defendants have not kept the plaintiffs and those represented by them reasonably informed concerning the amounts received in said fund and as to expenditures from said fund; but in the course of this proceeding have fully informed the plaintiffs of such receipts and expenditures.

13. Plaintiffs have questioned the policy, conduct, acts and omissions of defendants as set out in paragraphs 6 to 12, inclusive, hereinabove. An actual controversy exists between the parties concerning the rights and duties of the parties in the respects mentioned, the resolution of which directly involves the laws of the United States. It is especially desirable and important that such controversy be resolved by appropriate declaratory judgment in view of the peculiar circumstances of this case, the sensitive Federal-State relationships involved, and the extreme needs of the beneficiaries referred to in the Federal statute. The action, position and contention of the defendants, moreover, constitute in a sense claims to the funds in question which are adverse to the rights and interests of plaintiffs and those whom they represent and which should be resolved by Court decree, as far as the State of Utah may be concerned, pursuant to the provisions of 78–11–9, Utah Code Annotated, 1953, providing consent for suits against the State to determine adverse claims to specific property.

14. With respect to the expenditures mentioned in paragraph 6(a) and 6(b) above, the Court finds that in addition to the hospital mentioned, upon the patented land to which the pipeline leads there is a dude ranch operated by the owner of the land; that the airport and dam mentioned were built in the vicinity of the above-mentioned dude ranch and near a trading post operated by a white man; that these circumstances raise questions concerning the expenditures

mentioned, but that such expenditures may reasonably have been considered to be for the benefit of the Indians residing on said Extension within the contemplation of said Federal statute and that the evidence is insufficient to establish that such expenditures were not made in good faith for said purpose; that the waters to be saved by the dam were intended solely for the use of said Indians and that the airport was intended primarily to make said area available for the servicing of said Indians. The expenditures referred to in paragraph 6(c) to (d), inclusive, have not been questioned by plaintiffs.

15. The payment of $125,000 to the United States Public Health Service for the location of springs within the Aneth Extension and the determination of what may be done to improve the quality and utilization of these waters, are matters that reasonably could be deemed to be for the exclusive benefit of said Indians residing on the lands in question and this commitment was determined upon by the defendants in good faith for the purpose contemplated by the act.

16. Roads are constructed within and adjacent to the Extension and generally adequate to meet the present and foreseeable future needs of plaintiffs. The developing oil field is entirely within the Montezuma Creek portion and in this particular area roads are so numerous as to operate to the disadvantage of the Indian residents by reason of the incessant oil field traffic, resultant dust which destroys forage and the encroaching web of roads between the approximately 350 producing wells. A hard-surface road extends around the north end of the Montezuma Creek area from Shiprock, New Mexico, northerly into the Colorado communities of Cortez, Dolores, and Dove Creek, thence westerly into the Utah communities of Monticello, Blanding, Bluff, Mexican Hat and into and across a portion of the Ol Jato portion of the Extension. A hard-surface road extends southeasterly from the town of Blanding, Utah, to the existing and developing oil field and into the west portion of the Montezuma Creek area. The resident Indians travel on foot, by horseback or by pick-up truck over existing roads which, except for flash floods or unusual emergencies, are generally adequate for their purposes, and which could be suitably improved for their purposes by a relatively small portion of the proposed expenditure for roads. A hard surface road as proposed from the vicinity of Montezuma Creek through Aneth to the Colorado line would be of some benefit to the Indians resident on the Extension but not in proportion to the proposed expenditure, and would be of primary benefit to tourists, white persons within and without the area, business interests and the public in general. Moreover, the present proposal of the defendants calls for substantial expenditures for connecting road purposes outside of the Extension.

17. The defendants have not foreclosed in their deliberation the possibility of acquiring summer range and ranches as proposed by the plaintiffs, but up to this time have permitted considerations other than the best interests of the particular Indians residing upon the Extension to becloud this consideration. The question of whether such venture would be financially profitable has largely and perhaps inordinately preempted the ideas of defendants. It is practical for the defendants to more adequately ascertain and determine the needs and desires of the designated beneficiaries of the said fund. The defendants have acted in good faith and within the limits of good faith a rather wide discretion is proper and essential but only within the purposes and requirements of the Federal Statute. Said fund can be more beneficially and properly administered as contemplated by the Federal and State statutes upon proper ascertainment by defendants of the needs and desires of the resident Navajos and the recognition and clarification of standards and objectives for the administration and expenditure of said fund.

From the foregoing Findings of Fact the Court now makes and enters the following

Conclusions of Law.

1. That the Court has jurisdiction of the subject matter of this action and of the persons of the parties and the authority and obligation to adjudicate and declare the rights and duties of the respective parties with respect to said 37½ per cent fund and to determine any claims of the defendants thereto which may be adverse to the rights and interests of the plaintiffs and those whom they represent. That except as this decree may be implemented by supplemental proceedings in the manner provided by law, (pursuant to 28 U.S.C. § 2202) and without prejudice thereto, injunctive action is not necessary or warranted, and the Court has no jurisdiction or cause to enter charging orders or other money judgment against the defendants.

■ 2. That the duty of the defendants both under Federal and State law, between which there is no conflict in this respect, is to receive, administer and expend the said 37½ per cent fund for the benefit of the Navajo Indians residing on said Aneth Extension and such other Indians resident thereon at the time as the Secretary of the Interior has seen fit to settle thereon, all of whom are equitable beneficiaries of said fund. That said fund is not a public fund, and that it may not be used for State, Federal or public purposes or to discharge general governmental duties to the plaintiffs and those represented by them, who are citizens of the State of Utah and the United States of America and entitled to the rights and privileges of such citizenship.

■ 3. That within the limitations of the said Federal Act of March 1, 1933, 47 Stat. 1418, the defendants of necessity must have, and do have, a wide administrative discretion in determining the management and expenditure of said fund. That in view of such discretion reposed in the administrative agencies and processes of the State by the Federal statute, the burden of proof in the absence of patently unauthorized acts or omissions is upon those questioning the exercise thereof and in this case the plaintiffs have had the burden of proof.

■ 4. That the plaintiffs have failed to sustain their burden of proof with respect to questions raised concerning expenditures referred to in paragraphs 6 and 7(a) of the foregoing findings of fact.

5. That in the management and disbursement of said fund the defendants not only have the duty to refrain from utilizing said funds for unauthorized purposes, but they have the duty to reasonably expend said fund for authorized purposes, they being not merely conservators charged with the profitable investment or safeguarding of said fund, but rather administrators charged with the making of beneficial expenditures from said fund to assist the beneficiaries referred to in the Federal statute. That while the conservation or profitable investment of portions of said fund may be within the discretion of the defendants under various circumstances, its conservation or profitable maintenance contrary to the interests of the beneficiaries is not authorized as ends in and of themselves. Nor do the statutes contemplate the administration of the fund to fulfill the general duties of government owing to the plaintiffs and those they represent in common with all other citizens.

6. In administering the fund the defendants occupy a position of trust and confidence toward the Indian beneficiaries, and their conduct should be determined and judged by exacting fiduciary standards within the trust and discretion which Congress saw fit to repose in the agencies of the State in carrying out the purposes of the Federal Act. That in addition to general principles of reasonable care, honesty, good faith and loyalty, incumbent upon defendants are the duties of making or withholding expenditures from said fund with the motivating purpose and intent to assist or benefit the beneficiaries identified in the statute and without regard to the interests or desires of other persons, agencies or groups except as those reasonably

and necessarily would be considered in the management and expenditure of funds by a private trustee or owner thereof, or as might be mandatorily required by the laws or public policy of the State, but that so long as the exclusive motivating purpose of an expenditure from said fund is to aid and benefit the said beneficiaries, and the defendants act with reasonable care, honesty, good faith and loyalty to that end, the fact that it may also benefit others incidentally will not impeach the decision.

■ 7. That the payment of tuition in white schools of the children of Indians resident upon said Extension and the maintenance of roads across the lands described in the Federal statute, although mentioned therein as specific authorized uses, are not the only authorized expenditures from the fund for the benefit of said Indians, the defendants enjoying a wide discretion in providing other benefits. But, with respect to the provision for roads, the specifications of the statute have a limiting effect upon the powers of the defendants, in that the intent of Congress is clear that expenditure for roads must be limited to those within the Extension. This view reasonably explains the specific language employed by the Congress to the effect that the roads for which expenditures may be made shall be "across the lands described in section 1 hereof." If this were not intended as a limitation Congress would have authorized in terms the building or maintenance of roads generally so long as this was for the benefit of the Indian beneficiaries, and would have placed the construction and maintenance of roads on the same basis as the powers of the defendants to do other things for the benefit of the Indians. There was, indeed, good reason for this distinction as to roads, for it is apparent that the State has general public duties with respect to the construction and maintenance of highway and road systems throughout the State of Utah, and that while Congress was willing to assume that the expenditures from the fund for roads within the Extension would not unduly involve a conflict of interest that could not be properly resolved in the administration of the fund, this authority and the possible conflicts that would be involved otherwise were not intended to extend beyond the boundaries of the Extension in respect to roads. In any event, in view of the evidence, it is concluded that expenditures for the proposed road would not be such as to be for the benefit of those specified in the Federal statute and within its contemplation.

■ 8. That provision of summer range as suggested by plaintiffs would be an authorized expenditure from the fund should this be accomplished and administered equitably for the benefit of the beneficiaries designated in the statute; but whether this expenditure should be made is, under the evidence, a question for the exercise of the defendants' discretion within principles hereinbefore defined.

9. That the determination of the needs and desires of the beneficiaries should not be dependent upon the views of officers or members of the Navajo Indian Tribe as a whole, although these views may be considered as among those that may throw light upon defendants' duties, together with other circumstances and views. It is necessary to bear in mind that the tribe as a whole is not the designated beneficiary of this fund and that its interests and views may in some respects be in conflict with the more pertinent interests and views of the beneficiaries. The Tribe also has responsibilities to its members, including the beneficiaries of said fund, but said fund is not intended, and may not be used, for general tribal purposes. That the proper administration of said fund requires an effective canvas, expression and consideration, of the views of the beneficiaries. That in the execution of projects financed by the fund in question, the spirit and intent of the statute commends the utilization of the services of beneficiaries to the fullest extent practicable and consistent with sound administration. That the proper administration and expenditure of said fund makes desirable the

226

availability to the beneficiaries and their representatives of reasonably accurate, complete and current information concerning the receipts, expenditures and projects of the defendants. That beyond the mere legal right to this information or its availability from other sources, proper understanding and cooperation probably will be advanced, the effective expression and consideration of views and suggestions will be promoted in harmony with the statute and the policy of the Federal government towards the Indians, and the administration of the fund will be more in keeping with such statutes and policy if an affirmative program to this end is carried out by the defendants.

10. That the Court, pursuant to 28 U.S.C. § 2201, should declare the rights, duties and legal relations of the parties in accordance with the foregoing conclusions of law.

11. That no costs should be awarded herein.

Counsel for plaintiffs is hereby directed to submit a form of decree in accordance herewith for execution by the Court.