**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAKE C. PELT; DAN BENALLY; JIM
BENALLY; HELEN CLY; FRED
JOHNSON,

       Plaintiffs-Counter-Defendants-
       Appellees,

WALLACE SALTCLAH; HARRISON
JOHNSON; KENNETH MARYBOY;
COREY N. JOHNSON; LEO
MANHEIMER; NANCY A. TSOSIE,

       Plaintiffs-Intervenors-
       Appellees,

v.

STATE OF UTAH,

       Defendant-Counter-Claimant-
       Appellant.

Nos. 06-4046 & 06-4164

(2:92-CV-639-TC)

(D. Utah)

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 2:92-CV-00639-TC-SA)**

---

Debra J. Moore, Assistant Utah Attorney General (Philip S. Lott and Reha Deal, Assistant Utah Attorneys General, and Mark L. Shurtleff, Utah Attorney General, with her on the briefs), Salt Lake City, Utah, for Defendant - Appellant.

Brian M. Barnard, Utah Legal Clinic, Salt Lake City, Utah, for Plaintiffs - Appellees.

---

Before **LUCERO** and **MURPHY**, Circuit Judges, and **ROBINSON**, District Judge.[*]

---

**ROBINSON**, District Judge.

---

This appeal involves an oil and gas royalty fund that the State of Utah ("Utah") is required to administer for the benefit of members of the Navajo Nation living in San Juan County, Utah. In this class action, beneficiaries of the Navajo Trust Fund (the "Beneficiaries") seek a fiduciary accounting of trust fund activities from Utah. In proceedings below, Utah unsuccessfully argued that all or a portion of the Beneficiaries' claim was precluded by three prior cases to which the Beneficiaries were not parties. On appeal, Utah argues that Beneficiaries should be precluded because they were either "adequately" or "virtually" represented by parties in the three prior cases. After oral argument, the United States Supreme Court granted certiorari in Taylor v. Sturgell, No. 07-371, 2008 WL 2368748 (Jan. 12, 2008), to consider the theory of "virtual

---

[*]The Honorable Julie A. Robinson, United States District Court for the District of Kansas, sitting by designation.

representation."  This appeal was abated pending resolution of Taylor.  The

Supreme Court issued a decision in Taylor rejecting the theory of "virtual

representation" and concluded that nonparty preclusion is inappropriate unless

one of six established exceptions applies.  The Court ordered supplemental

briefing regarding the effect of Taylor on this appeal.  Exercising jurisdiction

under 28 U.S.C. § 1292(b), we AFFIRM.

## I.    JURISDICTION

The district court entered a partial summary judgment order on January 11,

2006.  Utah filed a notice of interlocutory appeal from that order, asserting

jurisdiction under 28 U.S.C. §§ 1291 and 1292(a), and Case No. 06-4046 was

opened.  Beneficiaries filed a motion to dismiss, challenging appellate jurisdiction

over the uncertified interlocutory order.  That issue was briefed and submitted to

this merits panel.

In the meantime, Utah requested the district court to certify the January 11,

2006 order for interlocutory appeal.  The district court granted the motion, and on

April 27, 2006, amended its order to include the appropriate language for

potential interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[2]  A petition

---

[2]    The district court determined that its ruling involved a controlling
question of law about which there is substantial ground for difference of opinion,
and that an immediate appeal would hasten resolution of the litigation.  Fed. R.
Civ. P. 54(b).  Specifically, the district court found that its ruling "fully impacts
adjudication of the remaining claims. . . . [I]t would be a waste of this court's and
counsels' time to document and analyze decades of trust account management if

(continued...)

-3-

seeking permission to appeal was then filed with this Court, Pelt v. Utah, Case No. 06-602, which was granted, and Case No. 06-4164 was opened on June 20, 2006. Utah filed a motion to consolidate the two appeals, but the clerk's panel denied the motion and the appeals were briefed separately on the merits.

The jurisdictional issue remains pending in Case No. 06-4046. In opposing Beneficiaries' motion to dismiss, Utah argued that the appeal in 06-4046 should be maintained because it provided a broader scope of review than the appeal in 06-4164. Specifically, Utah argued that this Court might be more inclined to exercise "supplemental" appellate jurisdiction over a prior 2001 district court order in 06-4064 because that appeal would not be dependent upon certification by the district court. Utah does not raise this supplemental jurisdiction argument in either appeal, however, and has acknowledged that the issues in these appeals are identical.[3]

The status of the appeals herein is that there is pending a timely discretionary appeal by Utah under section 1292(b) and an appeal under section 1291 requesting non-discretionary appeal of the same interlocutory order under section 1292(a)(1). In short, these identical appeals are before us both as one of right and one of petition. Because we granted Utah's petition for discretionary

---

[2](...continued)
on appeal the Tenth Circuit finds that the Pelt Plaintiffs were indeed adequately represented in the three earlier cases."

[3]      Utah's Br. 06-4164 at 2-3.

appeal under section 1292(b), we find it unnecessary to consider the simultaneous non-discretionary appeal under section 1292(a)(1) and dismiss Case No. 06-4046. See PPG Indus., Inc. v. Continental Oil Co., 478 F.2d 674, 676 n.1 (5th Cir. 1973).

## II.    PROCEDURAL AND FACTUAL BACKGROUND

In 1933, the federal government established the Navajo Trust Fund ("the Fund"), from which a percentage of royalties derived from exploitation of oil and gas deposits under the Navajo Reservation's Aneth Extension would be paid to Utah.  Such funds were to be spent for the health, education and general welfare of the Indians residing in the Aneth extension, the ancestral home of Navajo Indians and other Native Americans.  Congress later amended the beneficiary class to include all Navajo Indians living in San Juan County, Utah.  See Pelt v. Utah, 104 F.3d 1534, 1538-39 (10th Cir. 1996).

The present action is the fourth lawsuit brought by Fund beneficiaries against Utah challenging its administration of the Fund.  Before the instant case was filed, three other cases also sought equitable accountings of Fund receipts and expenditures for time periods now at issue.  These prior lawsuits are discussed below.

### Sakezzie v. Utah State Indian Affairs Commission

The Sakezzie action was filed in April 1961, on behalf of the named plaintiffs and "as representatives of and members of the class of persons who are

Navajo Indians residing within the Aneth Extension of the Navajo Indian Reservation in San Juan County, Utah." Although it was a class action, the Sakezzie case was not certified as such, nor was it subject to the current rules governing class actions under Federal Rule of Civil Procedure 23, as amended in 1966.

Plaintiffs requested an accounting of all Fund monies and alleged that no expenditures had been for their use and benefit. Plaintiffs did not seek monetary compensation in connection with the accounting. Utah provided answers to interrogatories containing a summary explanation of expenditures, with no supporting documentation. The case was tried to the court on June 12, 1961, at which time the district court issued an oral ruling where the judge stated:

> [t]he matter of accounting has been rendered moot by pretrial discovery, I believe, and also by the evidence which indicates that the agencies of the Federal Government have been receiving and paying over to the State the funds in question, leaving the problem of accountability in the area of disbursements, rather than checking receipts.

The "pretrial discovery" refers to the interrogatory answers, but it is not clear what other "evidence" the district court was referring to. Nothing in the record indicates that Plaintiffs objected to the district court's finding that the accounting claim was mooted by the interrogatory answers.

The district court entered written Findings of Fact and Conclusions of Law,

which stated that the court found that the Utah defendants "have not kept the plaintiffs and those represented by them reasonably informed concerning the amounts received in said [F]und and as to expenditures from said [F]und; but in the course of this proceeding have fully informed the plaintiffs of such receipts and expenditures." Sakezzie v. Utah Indian Affairs Comm'n, 198 F. Supp. 218, 222 (D. Utah 1961). ("Sakezzie I").  The court also concluded that the Fund is not a public fund.  Id. at 224.  Plaintiffs did not appeal from this order.

In July 1962, plaintiffs filed the first of two post-judgment petitions for relief, alleging that defendants were not complying with the district court's judgment and decree.  Plaintiffs alleged that defendants refused to provide them with information relating to either the receipts or disbursements of the Fund.  Plaintiffs sought an order requiring monthly accountings of both receipts and expenditures.  Defendants again filed answers to interrogatories setting forth what they characterized as accounting information in the form of an Indian Affairs Commission Annual Report that contained accounting information from July 1, 1961 through June 30, 1962.  On February 7, 1963, the district court entered a Memorandum of Decision, stating that while defendants had kept "full and proper" accounts of the funds received by them, they demonstrated

> remarkable unconcern about keeping the beneficiaries of
> the fund informed of accretions to said fund, about
> disbursements and commitments therefrom and about
> plans with respect to future expenditures, have failed to
> do what was convenient and reasonably within their
> power to advise the beneficiaries concerning these and

> other matters and have often ignored without
> justification or excuse requests and inquiries by the
> Indians or their representative.

Sakezzie v. Utah Indian Affairs Comm'n, 215 F. Supp. 12, 18 (D. Utah 1963) ("Sakezzie II"). The court went on to state that it was clear that defendants had not discharged their duty in that respect and, after some admonishment, ordered defendants to make monthly accounting reports of receipts and expenditures as requested by plaintiffs. Id. at 18-19, 24.

In May 1964, plaintiffs filed a second post-judgment petition seeking relief from defendants' alleged failure to comply with the two previous orders. This third petition alleged, inter alia, continued refusal of Fund administrators to provide information regarding ongoing receipts and expenditures. The third petition did not seek an order requiring Defendants to produce yet another accounting, but instead requested compensation for funds that the court found to have been expended or invested for purposes inconsistent with its previous orders, and an order enjoining defendants from making any further use or expenditures of the funds. The record in Sakezzie reveals no further activity for more than a year, when the district court ordered Plaintiffs to show cause why the third petition should not be dismissed. Plaintiffs' attorney did not attend the hearing and the district court dismissed the petition for failure to prosecute. Two days later, plaintiffs' counsel filed a Motion for Reinstatement. The court denied the motion, but granted Plaintiffs leave to file an amended petition. Plaintiffs did not

file another petition, and the <u>Sakezzie</u> case appears to have ended with the dismissal for failure to prosecute.

### *Jim v. State of Utah*

The case of <u>Jim v. Utah</u> was filed on February 7, 1970.  The named plaintiffs represented a class consisting of approximately 1500 Navajo and other Indians residing on the Aneth Extension of the Navajo Reservation.  The primary focus of the action was to challenge the constitutionality of the 1968 Amendment to the 1933 Act, which expanded the beneficiary class to comprise all Navajos living in San Juan County, Utah, and eliminated non-Navajos living on the Aneth Extension.  The complaint alleged that defendants

> are using and disbursing the said 37 1/2 % of such royalties received by the State of Utah in breach of their fiduciary duty to plaintiffs by expanding the same for the benefit of persons or parties who have no beneficial interest or other right therein and not for the benefit of plaintiffs.

Plaintiffs requested an accounting of monies received and spent from such royalties up to May 17, 1968.  There was no request for money damages.

When the case was certified as a class action under Fed. R. Civ. P. 23(b)(2), the district court determined that the case had sufficient notoriety that no further notice to members of the class was necessary.  A bench trial was conducted approximately one year later, and the district court entered an Interlocutory Decree and Order on February 7, 1972, declaring the 1968

-9-

Amendment unconstitutional and ordering Utah to file the monthly reports as previously ordered in Sakezzie II, for the periods from February 25, 1963 to May 17, 1968, and from May 17, 1968 to the present. Utah appealed the order to the United States Supreme Court, which reversed the district court's finding that the 1968 Amendment was unconstitutional. United States v. Jim, 409 U.S. 80, 82-83, 93 S. Ct. 261, 263, 34 L. Ed.2d 282 (1972).

On remand, the district court held that an accounting had yet to be done, and ordered Utah to file "a complete, comprehensive, proper, lawful accounting showing, for two periods, to wit, up to May 17, 1968 and from May 17, 1968 to the present [February 1974]." On February 7, 1974, Utah filed an "accounting and abstract" consisting of minutes and financial statements of the Utah Board of Indian Affairs. The parties stipulated that this information was being filed in lieu of a formal accounting as ordered by the court, and would not affect the court's right to require further reporting or accounting.

Approximately eighteen months later, at a hearing in July 1975, plaintiffs' counsel told the court that there were two remaining items to be resolved—attorney fees and an accounting. Counsel further stated that "[a]n accounting and abstract was filed with the court, and the plaintiffs do not object to that," and advised the court that the parties could not reach an agreement regarding fees and requested the matter set for hearing.

In May 1976, the district court held a hearing on plaintiffs' motion for attorney fees. After noting that Plaintiffs had hired three of the law firms recommended by the court, each firm was awarded fees in the amount of $10,000. Plaintiffs' counsel testified that, although the accounting demand was still pending, the court might still grant the motion for fees and dismiss Jim without prejudice:

> Now there has never been an accounting. The case is still pending as far as that accounting is concerned. If the Court wants to dispose of it I suppose the Court can dismiss it without prejudice as far as that accounting is concerned and we think he [sic] should award attorneys' fees to all of the attorneys involved.

The court responded,

> I think we should pursue the accounting matter, of course. I think that is the most important part of the lawsuit, really. The legal points are settled now. Let's have an accounting of what the state's been doing with the Indians' money. That's the short question we need to go into and let's pursue it.

Notwithstanding the district court's directive, no further action was taken in the case until more than two years later, in December 1978, when the court issued an order to show cause why the case should not be dismissed for failure to prosecute. After hearing statements of counsel, and with no cause being shown why the matter should not be dismissed, an order of dismissal was entered. The

order of dismissal is summary in nature, and no details of what was presented at the hearing were revealed.[4]  This appears to be the end of the Jim litigation.

### Bigman v. Utah Navajo Development Council, Inc.

While Jim was still pending, the complaint in Bigman was filed on February 7, 1977, by plaintiffs Seth Bigman and Martha Collins.  Although the case was not filed as a class action, the complaint alleged it was "an action by Navajo Indians as beneficiaries of an oil royalty trust fund seeking to preserve and protect the fund from defalcation and misexpenditures."  Counsel for the Bigman Plaintiffs expressly avoided pursuing a class action due to tension between the original beneficiaries and the beneficiaries added by the 1968 amendment.  The complaint alleged that Defendants had breached their fiduciary duty and requested an accounting as well as recovery of all money wrongfully expended from the Fund.

Seven months after the complaint was filed, the parties settled, and a Stipulated Judgment and Decree was entered by the Court on August 8, 1977.  The settlement provided for review of (1) questionable transactions, as raised by the plaintiffs, of the records and accounts of defendant Utah Navajo Development Council ("UNDC") from 1971 until present; (2) the UNDC's accounting and

---

[4]      Rule 41 of the Federal Rules of Civil Procedure, which describes the effect of an involuntary dismissal, states, as it did in 1978, that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication on the merits (i.e., is with prejudice)."  The 1978 Order of Dismissal did not specify that dismissal would be without prejudice.

management practices; and (3) the operation and management of medical clinics at Montezuma Creek, Mexican Hat, and Navajo Mountain.  Because the Bigman case was not a class action, no notice of the proposed settlement or the district court's review and acceptance of the settlement was provided to non-party beneficiaries.

The parties retained Dr. Roger Nelson to perform the review of the three issues set forth in the Stipulated Judgment and Decree.  The result of Dr. Nelson's investigation was a detailed report, referred to herein as the "Nelson Report," which was filed with the district court on December 12, 1977.  Section I of the Nelson Report investigated the management structure and operation of UNDC's service division and medical clinics, as well as the for-profit companies UNDC's affiliate, Utah Navajo Industries, owned and ran.  Section II of the Report investigated twenty-six "suspect transactions."  Section III summarized the management, organizational and accounting problems and Dr. Nelson's recommendations for change.  Although available for public inspection, it appears that the Nelson Report was not publicly distributed beyond the named plaintiffs.

Per the Stipulated Judgment and Decree, two remaining issues were presented to the district court without trial: (1) plaintiffs' claim that the oil royalty trust funds are not public funds and that defendants were expending the funds for public and governmental purposes, in violation of federal law and the precedents of the court; and (2) plaintiffs' claim that the defendants must

implement a program of Navajo preference in employment practices and hiring in the administration and expenditure of the Fund. The court also stated in the Decree that it was not limiting the plaintiffs' or other beneficiaries' "right to seek relief from violations of the law in the administration and expenditures of the oil royalty trust funds as may occur subsequent to the filing of this decree."

These issues were addressed by a Memorandum and Order issued on September 25, 1978. The district court determined that the preferential employment practices issue did not present a justiciable controversy and refrained from issuing what it characterized as an advisory opinion. The court further found that, on the record before it, it was "unable to ascertain whether the State of Utah has exceeded its authority or abused its discretion in directing the use of the funds for [certain specified purposes]." The court then declined to determine the lawfulness of specific expenditures due to lack of any evidentiary basis for doing so.

Having retained continuing jurisdiction over the enforcement or amendment of the Stipulated Judgment and Decree, the district court granted the parties' stipulated petition for amendment of the settlement regarding the organization of the UNDC and Utah Navajo Industries, Inc. ("UNI"). In 1989, the court issued a Stipulation and Joint Motion and Order granting the UNI additional time to repay money it owed to the Navajo Trust Fund. By this time, Eric Swenson, lead

plaintiffs' attorney in <u>Bigman</u>, had switched sides and was representing the defendant UNDC. There was no further court activity in the <u>Bigman</u> case.

### *Present Case—Pelt v. State of Utah*

In 1992, plaintiffs Jake C. Pelt and other named individuals, members of the beneficiary class ("Beneficiaries"), filed this action alleging, *inter alia*, that Utah breached its fiduciary duty to the class when it allegedly mismanaged the Fund. Beneficiaries seek (1) a full and accurate accounting of decades of income and disbursements from the Fund, and (2) reimbursement to the Fund for undocumented or improper disbursements and income. Like <u>Jim</u>, this suit was certified as a Rule 23(b)(2) class action.

Utah filed a motion to dismiss, which was granted on the grounds that the federal statute that created the Fund did not create a private right of action for breach of trust. <u>See Pelt v. Utah</u>, 104 F.3d 1534, 1537 (10th Cir. 1996) ("<u>Pelt I</u>"). We reversed, holding that "the nature of the Act's intended operation along with subsequent court cases (of which Congress was fully cognizant when it passed the 1968 Amendments) seem to indicate that the Fund was to operate with trust-like rights and responsibilities—including the beneficiaries' rights to bring suit to address breaches of fiduciary duty." <u>Id</u>. at 1542 (citations omitted).

On remand, the parties agreed that Utah is required to produce an accounting and in June 2001, the district court entered an order establishing the parameters of Utah's duty to account as well as Beneficiaries' exceptions to such

accounting.[5]  The parties disagreed, however, on the issue of which years Utah is obligated to account for Fund expenditures.  Beneficiaries request an accounting detailing trust activities back to the 1950's; Utah asserts that accountings performed during the previous Fund cases satisfied Utah's accounting obligation with respect to certain years.  Specifically, Utah raised the affirmative defense of res judicata, arguing that a significant portion of Beneficiaries' accounting claims is barred by the preclusive effect of Sakezzie, Jim and Bigman.

On December 20, 2002, the district court denied the parties' cross-motions for summary judgment on the issue of claim preclusion.  In that Order, the district court held that two of the three elements of the res judicata requirements had been established: (1) that the three prior cases "ended with a final decisions on the merits," and (2) that "for purposes of determining res judicata, the claims in Pelt are identical to those alleged in Sakezzie, Jim and Bigman."  The district court declined to rule on the third element—whether Beneficiaries are in privity with the plaintiffs in the previous cases.  The district court held that, "[i]n order to show privity between a non-party and a party to former litigation, the party who asserts that the matter is barred by claim preclusion must demonstrate that the nonparty's interests and rights were represented and protected in the prior action."

_____

[5]       Prior to the order establishing accounting guidelines, the district court apparently dismissed Utah's statute of limitations and laches defenses.  See Pelt v. Utah, No. 92-CV-639-TC, 2007 WL 2446843, at *1 n.1 (D. Utah Aug. 23, 2007).

-16-

The district court concluded that on the record before it, it could not determine whether Beneficiaries' interests were adequately represented in the prior actions. The district court held that Utah failed to meet its burden to establish privity, as it had not affirmatively argued that the representation in the prior cases was adequate or offered any evidence of adequate representation. Likewise, the district court held, Beneficiaries had not established that the representation in the prior cases was inadequate. Because privity remained a disputed issue of material fact, Beneficiaries' cross-motion was also denied.

In 2005, after extensive discovery, Beneficiaries moved for summary judgment on the question of whether their interests were adequately represented in Sakezzie, Jim and Bigman. In January 2006, the district court held that because Beneficiaries were not adequately represented in the prior class actions and there was no evidence of any legal relationship or other form of accountability between the Bigman and Pelt plaintiffs, Beneficiaries are not bound by the judgments therein. Citing its December, 2002 Order, the district court reaffirmed its holding that Utah, which raised the affirmative defense of claim preclusion, has the burden to establish that privity, or adequacy of representation, existed in the previous cases. The district court ruled that because Beneficiaries "are working with a clean slate," Utah must account for Fund expenditures during the entirety of its administration of the Fund. This appeal followed.

## III. STANDARD OF REVIEW

On appeal, Utah asserts that the district court erred in granting Beneficiaries' motion for summary judgment. We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. Mountain West Mines, Inc. v. Cleveland-Cliffs Iron Co., 470 F.3d 947, 950 (10th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986), and a "genuine" issue is one for which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"In our circuit, '[t]he moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment.'" Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002) (quoting Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991)). When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law. Id.

-18-

(citation omitted). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Id. (citation omitted).

Conversely, if the moving party has the burden of proof, a more stringent summary judgment standard applies. Thus, if the moving party bears the burden of proof, to obtain summary judgment, it cannot force the nonmoving party to come forward with "specific facts showing there [is] a genuine issue for trial" merely by pointing to parts of the record that it believes illustrate the absence of a genuine issue of material fact. Mudrick v. Cross Services, Inc., 200 F. App'x 338, 340 (5th Cir. 2006) (citing Celotex v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986)). Instead, the moving party must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case. Id.

While the issue of whether privity exists is a question of fact, Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co., 878 F.2d 1271, 1276 (10th Cir. 1989), "[t]he question of application of res judicata to the facts, viewed in the light most favorable to the nonmoving party, is a pure question of law to be reviewed de novo." United States v. Power Eng'g Co., 303 F.3d 1232, 1240 (10th Cir. 2002) (citing Plotner v. AT & T Corp., 224 F.3d 1161, 1168 (10th Cir.

-19-

2000)); see King v. Union Oil Co. of Cal., 117 F.3d 443, 445 (10th Cir. 1997) (stating "[w]here the facts are not in dispute, this court must determine de novo whether the substantive law of res judicata was correctly applied" (internal quotation omitted)). In this case, the district court made no factual findings, but instead applied res judicata to the undisputed facts. Thus, while on de novo review, we must engage in a fact-intensive analysis to determine whether there is privity between Beneficiaries and the plaintiffs in the prior suits, that factual analysis does not render our inquiry entirely factual in nature.

## IV. DISCUSSION

### A. Nonparty Preclusion

Pursuant to the doctrine of res judicata "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards, 314 F.3d 501, 503-04 (10th Cir. 2002) (quotation omitted). "Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." MATEC Inc. v. Gorelick, 427 F.3d 821, 831 (10th Cir. 2005). In its December 20, 2002 Order, the district court found that the first and third elements have been established and are not at issue in this appeal.

As for the second factor, there is no question that the named plaintiffs in the earlier suits were not the same as the named plaintiffs in the instant action. It is a fundamental rule of civil procedure that one who was not a party to an action is not bound by the judgment. Richards v. Jefferson County, Ala., 517 U.S. 793, 798, 116 S. Ct. 1761, 1766, 135 L. Ed.2d 76 (1996) (citing Hansberry v. Lee, 311 U.S. 32, 40, 61 S. Ct. 115, 117, 85 L. Ed. 22 (1940)). The Supreme Court recently reiterated that "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit," so that applying preclusion principles in such cases "runs up against the deep-rooted historic tradition that everyone should have his own day in court." Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008) (quoting Richards, 517 U.S. at 798, 116 S. Ct. at 1766 (internal quotation marks omitted)).

An exception to this rule exists when it can be said that there is "privity" between a party to the second case and one who is bound by an earlier judgment. Richards, 517 U.S. at 798. "Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." Lowell Staats Min. Co. v. Philadelphia Elec. Co., 878 F.2d 1271, 1275 (10th Cir. 1989). "[T]his court has recognized that no definition of privity can be 'automatically applied in all cases involving the doctrine of res judicata.'" Century Indem. Co. v. Hanover Ins. Co., 417 F.3d 1156, 1160 (10th Cir. 2005) (quotation omitted). As Taylor explained,

-21-

"[t]he substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.' . . . The term 'privity,' however, has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground. . . ." Taylor, 128 S. Ct. at 2172 n.8.

Taylor noted six categories of recognized exceptions to the general rule against nonparty preclusion: (1) when a person agrees to be bound by the determination of issues in an action between others; (2) when a pre-existing substantive legal relationship exists; (3) when a nonparty was "adequately represented by someone with the same interests who [wa]s a party" in an earlier suit; (4) when the nonparty assumed control over the earlier litigation; (5) when a party who did not take part in litigation, as a way of avoiding preclusion, later sues as the designated representative of a person who was a party to the earlier suit; and (6) when a special statutory scheme, such as bankruptcy, so directs. Id. at 2172-73.

Significant to this appeal, Taylor reaffirmed the limitations attending nonparty preclusion based on adequate representation:

> A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative were aligned, see Hansberry, 311 U.S. at 43; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the non-party, see Richards, 517 U.S. at 801-802. . . . In addition, adequate representation sometimes requires (3) notice of the original suit to the

-22-

> persons alleged to have been represented, <u>see Richards</u>, 517 U.S. at 801.  In the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23.

<u>Id</u>. at 2176.

Also significant is <u>Taylor's</u> rejection of an expansive "virtual representation" exception to nonparty preclusion.  <u>Id</u>. at 2178.  Under this doctrine, " a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative."  <u>Meza v. Gen. Battery Corp.</u>, 908 F.2d 1262, 1272 (5th Cir. 1990) (quotation omitted).  After noting that decisions of lower courts recognizing this exception "have been far from consistent," <u>Taylor</u>, 128 S. Ct. at 2173, the Court rejected the argument that it should give up the effort to define discrete categories of exception for an "equitable and fact intensive" inquiry in deciding whether a relationship between a party and a nonparty is "close enough" to trigger nonparty preclusion.  <u>Id</u>. at 2174.  In so ruling, the Court cited the limitations based on adequate representation, <u>supra</u>, noting that an overly broad view of virtual representation would

> recogniz[e], in effect, a common-law kind of class action. . . . That is, virtual representation would authorize preclusion based on identity of interests and some kind of relationship between parties and nonparties, shorn of the procedural protections prescribed in <u>Hansberry</u>, <u>Richards</u>, and Rule 23.  These protections, grounded in due process, could be

> circumvented were we to approve a virtual
> representation doctrine that allowed courts to "create *de
> facto* class actions at will."

Id. at 2176 (quoting Tice v. Am. Airlines, Inc., 162 F.3d 966, 973 (7th Cir.

1998)).

Where a change of law occurs while a case is on appeal, we apply the law

in effect at the time of our decision. Miller v. City of Mission, 705 F.2d 368, 377

(10th Cir. 1983). Here, there is no dispute that Beneficiaries were members of

the class in Sakezzie and Jim, and had the same status as beneficiaries of the Fund

as the plaintiffs in Bigman. The central issue in this appeal remains whether the

Beneficiaries were "adequately represented" by the previous plaintiffs in any or

all of the prior cases so that they are bound by the judgments therein. Utah also

argues that post-Taylor, the "pre-existing substantive legal relationship"

exception applies.

## B.     Burden of Proof

As an initial matter, Utah contends that the district court erred when it

ruled that Utah had the burden of establishing privity and thus, adequate

representation. Generally, claim preclusion is an affirmative defense and it is

incumbent upon the defendant to plead and prove such a defense. Taylor, 128

S.Ct. At 2179-80 (citing Jones v. Bock, 549 U.S. 199, 204, 127 S. Ct. 910, 166 L.

Ed.2d 798 (2007); Nwosun v. Gen. Mills Rest. Inc., 124 F.3d 1255, 1257 (10th

-24-

Cir. 1997)).  Utah argues that Beneficiaries have mounted what amounts to a

collateral attack on the previous class action judgments, and thus Beneficiaries

should bear the burden to prove inadequate representation as an element of their

claims.[6]  Utah urges that, while a party raising the affirmative defense of res

judicata has the burden to prove privity, a plaintiff mounting a collateral attack on

a class action judgment has the burden to prove the exception to that rule,

inadequate representation.

---

[6]     Beneficiaries contend that Utah did not adequately preserve its argument that they bear the burden to prove inadequate representation.  This argument was raised by Utah and rejected by the district court in its December 20, 2002 order, where the court held that Utah bore the burden to prove adequate representation as part of its res judicata affirmative defense.  In its subsequent briefing on privity and adequate representation, Utah complied with the district court's determination and offered evidence and argument that representation in the prior cases was adequate.  In its 2006 order granting summary judgment on the privity issue, the district court again placed the burden to prove adequacy of representation on Utah and this order was certified for immediate appeal under 28 U.S.C. § 1292(b).  The language of § 1292(b) makes clear that "appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court."  Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205, 116 S. Ct. 619, 623, 133 L. Ed.2d 578 (1996) (emphasis in original).  Thus, although we "may not reach beyond the certified order to address other orders made in the case," we "may address any issue fairly included within the certified order."  Id.  Certainly the question of which party bears the burden of proof is an unavoidable element of Utah's res judicata arguments generally, and the adequate representation arguments specifically, both of which are properly before this Court on appeal.  Indeed, the district court's determination that Utah bore the burden of proof formed part of the legal basis for the decision on appeal.  Because this issue was "fairly included" in the 2006 order, we have jurisdiction under § 1292(b) to consider the issue of which party properly bears the burden of proof on the issue of adequacy of representation.

Taylor rejected a similar burden-shifting argument that on remand the plaintiff should bear the burden of proving he was not acting as an agent of a party bound by the prior adjudication. In that case, the defendant maintained that when a defendant points to evidence establishing a close relationship between successive litigants, the burden shifts to the plaintiff to submit evidence refuting the charge of agency. Taylor, 128 S. Ct. at 2179. The Court explained:

> Claim preclusion, like issue preclusion, is an affirmative defense. . . . Ordinarily, it is incumbent on the defendant to plead and prove such a defense, . . . and we have never recognized claim preclusion as an exception to that general rule. . . . We acknowledge that direct evidence justifying nonparty preclusion is often in the hands of plaintiffs rather than defendants. . . . but "[v]ery often one must plead and prove matters as to which his adversary has superior access to the proof." . . . In these situations, targeted interrogatories or deposition questions can reduce the information disparity. We see no greater cause here than in other matters of affirmative defense to disturb the traditional allocation of the proof burden.

Id. at 2180.

Thus, because Utah has raised the affirmative defense of claim preclusion, it has the burden to establish that privity exists in the prior cases, that is, that Beneficiaries were adequately represented. Id.; Nwoson v. Gen. Mills Rest., 124 F.3d 1255, 1257 (10th Cir. 1997).[7]

---

[7] In any event, Beneficiaries presented evidence that their interests were inadequately represented in the previous cases. Instead of merely pointing

(continued...)

### C.      Adequate Representation

### 1.      Class Actions

It is well settled that a class action judgment is binding on all class members.  See Hansberry v. Lee, 311 U.S. 32, 40, 61 S. Ct. 115, 85 L. Ed. 22 (1940). It is also well settled that a class action judgment will not bind absent members if they were not accorded due process of the law.  Id. at 41, 61 S. Ct. at 115.  The preclusive effect of a prior judgment will depend upon whether absent members were "in fact" adequately represented by parties who are present.  Id. at 42-43; 61 S. Ct. at 118.

Because the prior lawsuits in this matter span both pre- and post-amendment to Fed. R. Civ. P. 23, some historical background is instructive.  Prior to the 1966 amendment of Rule 23, class actions were placed in three categories.  A "true class" action in which the right to be enforced was "joint," "common," or "secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it."  7A

_____

[7](...continued)
to parts of the record that illustrated the absence of a genuine issue of material fact, Beneficiaries sought to establish, as a matter of law, that their accounting claims were not precluded because their interests were inadequately represented. Indeed, Beneficiaries specifically argue in their motion for summary judgment that the undisputed facts support a finding of inadequate representation. Moreover, the district court did not find that Utah had failed to meet its burden of proof that Beneficiaries were adequately represented.  Instead, it made extensive findings that Beneficiaries were not adequately represented.

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1752 (3d ed. 2007). All class suits that were not "true" were either "hybrid" or "spurious," in which the claims urged were "several" rather than joint or common. In a "hybrid" action, the object of the proceeding was the adjudication of claims that did or might affect specific property involved in the action. Id. A "spurious" action was one in which the action was based solely on common questions. 7A Wright & Miller, supra, § 1777. The effect of a judgment in a class action depended on the characterization of the suit. A judgment rendered in a "true" class action was binding on all class members; a judgment in a "hybrid" suit bound the class members only with regard to their rights in the res that was in controversy; and a judgment in a "spurious" class suit bound only the parties actually before the court. 7A Wright & Miller, supra, § 1789.

Because the 1966 amendments to Rule 23 eliminated the distinctions between class actions, and consequentially the degrees of preclusive effect accruing in each, the requirement of adequate representation has become more critical. Rule 23 was drawn to meet constitutional requirements—subsection (a)(4) requires that the class be adequately represented and subsection (c)(2) requires that notice be given to absent class members in Rule 23(b)(3) actions; notice also will usually be provided in Rule 23(b)(1) and (b)(2) actions, at the discretion of the court. See Fed. R. Civ. P. 23. These prerequisites meet the

standard established by the Supreme Court in <u>Hansberry</u>, 311 U.S. at 42, 61 S. Ct. at 118, and <u>Taylor</u>, 128 S. Ct. at 2176.

The determination made by the original class action court that the representative adequately represented the class members, even though correct when made, may not be correct at later stages of the litigation. It is well settled that a court adjudicating a class action cannot predetermine the res judicata effect of its own judgment; that can only be determined in a subsequent suit. <u>Taunton Gardens Co. v. Hills</u>, 557 F.2d 877, 878 (1st Cir. 1977). The Advisory Committee, in its Note to the 1966 amendment of Rule 23, noted that nothing in the rule disturbs this general principle, but added that "[t]he court . . . in framing the judgment in any suit brought as a class action, must decide what its extent of coverage shall be, and if the matter is carefully considered, questions of res judicata are less likely to be raised at a later time and if raised will be more satisfactorily answered." <u>See</u> Advisory Comm. Note, 39 F.R.D. 98, 106 (1966). Thus, a court determining the res judicata effect of a prior class judgment on an absent class member must evaluate the adequacy of representation in terms of both the first court's initial inquiry, as well as in light of whether the representation was adequate after the termination of the lawsuit. <u>Gonzales v. Cassidy</u>, 474 F.2d 67, 72 (5th Cir. 1973). Due process requires adequate representation "at all times" throughout the litigation. <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 811-12, 105 S. Ct. 2965, 2974, 86 L. Ed.2d 628 (1985).

The standard for evaluating adequacy of representation in a class action suit was discussed by the Fifth Circuit in Gonzales, where the court established a two-prong test to determine whether adequacy of representation was satisfied: "(1) [d]id the trial court in the first suit correctly determine, initially, that the representative would adequately represent the class? and (2) [d]oes it appear, after termination of the suit, that the class representative adequately protected the interest of the class?"  474 F.2d at 72.  The first question involves a collateral review of the trial court's determination to permit the suit to proceed as a class action, while the second involves a review of "the class representative's conduct of the entire suit—an inquiry which is not required to be made by the trial court but which is appropriate in a collateral attack on the judgment. . . ."  Id.  The court held that the

> primary criterion for determining whether the class
> representative had adequately represented his class for
> purposes of res judicata is whether the representative,
> through qualified counsel, vigorously and tenaciously
> protected the interests of the class.  A court must view
> the representative's conduct of the entire litigation with
> this criterion as its guidepost.

Id. at 75.  The adequacy inquiry following final judgment "necessarily requires a hindsight approach to the issue of adequate representation, and in no way reflects on the [district] court's conclusion [at the outset] that the [class representative] would adequately represent the class."  Id. at 73 n.11.  After consideration of these standards, the Gonzalez court concluded that the representative's failure to

appeal an order denying retroactive relief to all class members except the representative constituted inadequate representation of the class. Id. at 75-76.

We have distinguished Gonzalez, which permitted a Rule 23(b)(2) collateral attack, from class actions certified under Rule 23(b)(3). There are no mandatory notice requirements in subsections (b)(1) and (b)(2) actions, and members do not have the opportunity to opt out of the class, opportunities accorded to subsection (b)(3) class members. See In re Four Seasons Sec. Laws Litig., 502 F.2d 834, 842, n.9 (10th Cir. 1974). "As a result of these distinctions class members in (b)(1) and (b)(2) actions must necessarily rely on the representative to protect their interests." Id. (quoting Gonzales, 474 F.2d at 74 n.12). "Therefore, the propriety and adequacy of representation accorded to absent class members by the named parties in (b)(1) and (b)(2) actions should be critically evaluated before their rights are foreclosed." Grigsby v. N. Miss. Med. Ctr., Inc., 586 F.2d 457, 461 (5th Cir. 1978).

Although this Circuit has not specifically applied the demanding Gonzales formula, we have similarly held that "[t]he question of adequate representation can best be resolved by determining whether the interests of those who would attack the judgment were vigorously pursued and protected in the class action by qualified counsel." Garcia v. Bd. of Edu., 573 F.2d 676, 680 (10th Cir. 1978) (citing Gonzales, 474 F.2d at 75). In Garcia, a class action suit was brought by Hispanic schoolchildren and their parents seeking to stop desegregation of their

-31-

neighborhood school.  Id. at 677.  The suit was an offspring of a previous lengthy desegregation case that resulted in a city-wide desegregation plan in Denver.  Id. Plaintiffs argued that because their community was predominately Hispanic by choice and because they did not want to take part in any desegregation plan, they were not parties to the previous litigation because their interests were neither the same as nor adequately represented by the plaintiff class.  Id. at 679.

Answering the question of adequate representation in the affirmative, we pointed out the fact that the prior litigation had gone on for seven years was evidence in itself that it was a hard fought contest; that the desegregation plan ultimately adopted by the district court was developed by the court's own expert; and that the court had rejected each of the parties' plans as being too one sided. Id. at 680.  Stating that the plaintiffs' argument that their interests were not identical with all those of the plaintiff classes in the prior litigation did not preclude the application of res judicata, we concluded that where substantially all of the plaintiffs' interests were vigorously presented in the litigation by the various parties, there was no justification for allowing the litigation to be effectively reopened and we affirmed the district court's application of res judicata.  Id.

*Application to Sakezzie and Jim*

The district court's determination that Beneficiaries were not adequately represented by the Sakezzie and Jim plaintiffs focused on the fact that, despite Utah's failure to provide an accounting as ordered, both cases were dismissed by the court for failure to prosecute after an order to show cause had been issued. Based on the record before us, we are compelled to agree that the Sakezzie and Jim plaintiffs failed to vigorously pursue and protect the Beneficiaries' interests.

We assume for present purposes that the minimum requirements for adequate representation set forth in Taylor, alignment of interests and steps taken by the courts to protect non-party interests, have been met. While it is not clear whether Sakezzie was a "true" or "hybrid" class action, it is clear that it was not "spurious," thus binding class members, and Jim was certified as a class action pursuant to Rule 23(b)(2). A determination that the minimum requirements for adequate representation have been met does not necessarily end the inquiry, however, and our analysis turns on whether binding Beneficiaries would violate due process, that is, whether Beneficiaries were "in fact" adequately represented in Sakezzie or Jim.

After the initial Sakezzie complaint was filed, Utah provided answers to interrogatories containing what Utah characterized as "accounting information." This information was summary in nature and included no supporting documentation. When the district court concluded that these answers to interrogatories mooted the accounting claim, the plaintiffs did not object, and the

-33-

court subsequently entered an order stating that Utah had fully informed the plaintiffs of receipts and expenditures from the Fund. Sakezzie I, 198 F. Supp. 218, 222 (D. Utah 1961). Plaintiffs did not appeal from this order.

The Sakezzie plaintiffs then filed a second petition alleging that Utah was not complying with the district court's order and seeking monthly accounting reports for the Fund. Ultimately, the second petition resulted in Sakezzie II, where the district court specifically ordered Utah to make monthly accounting reports. Despite the strongly-worded order of the district court, Utah again failed to comply with the monthly reporting requirement, and the Sakezzie plaintiffs filed a third petition. After more than a year, the case was dismissed by the court for failure to prosecute after an order to show cause had been issued. Although the district court granted leave to file an amended petition, the plaintiffs took no action.

Similarly, the Jim plaintiffs successfully obtained an order directing Utah to file monthly accounting reports, not only for the period involved in that lawsuit, but for the period previously ordered in Sakezzie. On remand from the Supreme Court, the district court held that the accounting ordered in its 1972 Interlocutory Decree and Order had not been done and that the Jim plaintiffs were entitled to an accounting. The court again ordered Utah to file a complete and comprehensive accounting. Thereafter, when plaintiffs confirmed that an accounting had yet to be completed, the court emphasized that the accounting was

"the most important part of the lawsuit, really," noting that it had not been accomplished as late as May 25, 1976. Notwithstanding the district court's edict, no further action was taken in the Jim case until more than two years later, in December 1978, when the court issued an order to show cause why the case should not be dismissed for failure to prosecute. As noted above, the case was dismissed, with prejudice.

Neither case scenario depicts a situation in which Beneficiaries' interests were vigorously pursued and protected by the class representatives. The class representatives in both cases successfully obtained orders directing Utah to provide accountings. After two class actions spanning almost seventeen years, however, Utah had yet to provide an accounting to either the Sakezzie or Jim plaintiffs and, remarkably, both class actions were dismissed for failure to prosecute after an order to show cause had been issued by the respective courts. Nevertheless, Utah asks us to reverse the district court's conclusion that Beneficiaries were not adequately represented in Sakezzie or Jim.

Utah contends that vigorous pursuit and protection of absent class members' interests depends on an identity of interests between the named plaintiffs and the absent class members. Thus, Utah argues, the district court erroneously conducted a qualitative evaluation of class counsel's performance by second-guessing actual trial strategy in Sakezzie and Jim because the only relevant consideration is identity of interests between prior and current plaintiffs.

-35-

Instead, Utah asserts, this Court should focus on the incentive to litigate created by the close alignment of the interests at issue.  We disagree.

While it is true that the parties' interests in the Fund are the same, shared interests do not alone ensure adequate protection.  Once the case proceeds to final judgment and is asserted as part of a claim preclusion defense, the question shifts from incentive to litigate to whether the absent parties' interests were *in fact* vigorously pursued and protected.  See Hansberry v. Lee, 311 U.S. 32, 42-43, 61 S. Ct. 115, 118-119, 120, 85 L. Ed. 22 (1940); Gonzales v. Cassidy, 474 F.2d 67, 75 (5th Cir. 1973); 18A Wright & Miller, supra, § 4455 (in the context of preclusion, even if there is no divergence of interests, the representatives must provide representation that is in fact adequate).

Moreover, the adequacy determination following final judgment "necessarily requires a hindsight approach to the issue of adequate representation, . . ." Gonzales, 474 F.2d at 73 n.11.  Utah erroneously argues that this focus is limited to the conduct of the class representative, rather than class counsel. Instead, the question of adequate representation for purposes of res judicata is whether the class representative, through qualified counsel, vigorously pursued and protected the interests of the class.  Id. at 75; accord Garcia v. Bd. of Edu., 573 F.2d 676, 680 (10th Cir. 1978).  Realistically, for purposes of determining adequate representation, the performance of class counsel is intertwined with that of the class representative.  As the Seventh Circuit explained, "[e]xperience

-36-

teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary is [sic] sheer sophistry." Culver v. City of Milwaukee, 277 F.3d 908, 913 (7th Cir. 2002) (quoting Greenfield v. Villager Indus., Inc., 483 F.2d 824, 832 n.9 (3d Cir. 1973)). This necessarily entails consideration of the actual conduct of the litigation in determining whether the absent class members were in fact adequately represented.

Contrary to Utah's assertions, we need not "second guess" class counsel's litigation strategy or tactics in Sakezzie or Jim in order to determine that the class representatives, through counsel, failed to follow through or take action on the accounting issues, which ultimately resulted in no accountings and the dismissal of both cases for failure to prosecute. Utah counters that even a class representative's decision to abandon a claim is not *per se* inconsistent with adequate representation. Utah is correct that in the context of settlement, abandonment of claims can be a reasonable litigation tactic that does not necessarily support a finding of inadequate representation, citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 109-113 (2d Cir. 2005). The Wal-Mart case was a Rule 23(b)(3) case, however, and plaintiffs were given notice and the opportunity to object to the proposed settlement. Id. at 102-103. Plaintiffs' claim of inadequate representation was rejected by the Second Circuit as akin to a challenge to the adequacy of the settlement, rather than due process. Id. at 112.

-37-

By contrast, the Sakezzie and Jim accounting claims were not abandoned in the context of settlement, but rather, were simply dismissed for failure to prosecute. Unlike class members in a settlement, the plaintiffs received nothing in exchange for abandonment of those claims.

Finally, in declining to give preclusive effect to the judgment entered in Jim, the district court noted the Jim court's failure to provide formal notice to the class members and stated that the record did not support a finding that the Jim case's "notoriety" generated the kind of notice necessary to protect the rights of absent class members. Utah argues that because the manner in which the Jim class was certified was constitutionally adequate, the district court erred by holding the Jim class certification to a higher standard than required by Rule 23. The Jim class action was maintained under Rule 23(b)(2), which provides an action may be maintained as a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The fact that the Jim class members did not receive formal notice is not dispositive of the issue of claim preclusion. Due process does not require notice for absent class members in all actions under Rule 23(b)(2), as long as the class members were adequately represented. Alexander v. Aero Lodge No. 735, Int'l Assn. of Machinists & Aerospace Workers, AFT-CIO, 565 F.2d 1364, 1374 (6th Cir. 1977), cert. denied, 436 U.S. 946, 98 S. Ct. 2849,

56 L. Ed. 2d 787 (1978). Stated another way, the fact that notice was adequate does not necessarily cure inadequate representation. Thus, the district court's comments about lack of notice, while inaccurate, do not alter or affect our conclusion that the Jim plaintiffs failed to vigorously pursue and protect the absent class member's interests.

In so ruling, we recognize the importance of finality of judgments and do not read the adequacy of representation inquiry as requiring second-guessing of every litigation decision. As one court succinctly stated, "[d]ue process entitles class members to notice and to adequate representation. It does not entitle them to continue to challenge the defendant's conduct until they are ultimately successful." Quigley v. Braniff Airways, Inc., 85 F.R.D. 74, 77 (C.D. Tex. 1979). This is not such a case. The unique factual situation of Sakezzie and Jim leads us to conclude that the interests of the Beneficiaries were not adequately represented. Accordingly, the district court was correct in its application of res judicata and Beneficiaries are not bound by the judgments in the previous class actions.

### 2.    Non-Class Actions

Likewise, it is clear from the record that preclusion cannot be justified on the grounds that Beneficiaries were adequately represented in Bigman. As previously discussed, the Supreme Court has established that in addition to alignment of interests, representation is adequate for purposes of nonparty

preclusion only if, at a minimum, special procedures were taken in the first case to protect the interest of absent parties or the parties to the first litigation understood their suit to be in a representative capacity. Taylor, 128 S. Ct. at 2176. Nothing in the record indicates that the Bigman plaintiffs understood that they were suing on Beneficiaries' behalf; indeed, it is undisputed that the decision not to pursue a class action was intentional and precipitated by tensions between the original and new beneficiaries. The Bigman complaint did not purport to bring the action on behalf of the Fund beneficiaries. There is no evidence that plaintiffs and their counsel were working on anyone's behalf other than their own. Although there is evidence that the lawsuit was discussed at several Navajo chapter meetings, there is nothing in the record that the Utah district court took special care to protect Beneficiaries' interests. Thus, extending the adequate protection exception to nonparty exclusion to Bigman would constitute the very type of "common-law class action" rejected by Taylor. Id.

## D.    Substantive Legal Relationship

Utah originally argued on appeal that privity is established under the doctrine of virtual representation because the Beneficiaries' legal interests in the Fund are identical to those of the Bigman plaintiffs and because the instant case is "in the nature of" an action to vindicate a public right. Because all plaintiffs, past and present, are co-beneficiaries of the Fund, and because their interest in the Fund is common rather than personal, Utah argued that litigation relating to the

Fund necessarily decides every beneficiary's rights. Thus, Utah argued, the district court's finding that there was no evidence of any legal relationship or form of accountability "overlooks the reality of the interest at issue in Bigman." In support of its argument, Utah relied on the Eighth Circuit's decision in Tyus v. Schoemehl, 93 F.3d 449 (8th Cir. 1996), which established a seven-factor test for virtual representation, including identity of interests, a close relationship between the parties, adequate representation by the prior party, incentive to litigate, and a suit raising a public rather than private law issue. Id. at 454-56.

Utah's argument is no longer viable in light of Taylor, which not only rejected the theory of virtual representation, but also rebuffed the argument that a broader reading of nonparty preclusion is appropriate in "public law" litigation. Taylor, 128 S. Ct. at 2177. Taylor explained that in its decision in Richards, it observed that when a taxpayer challenges "an alleged misuse of public funds" or "other public action," the suit "has only an indirect impact on [the plaintiff's] interests." Id. (quoting Richards v. Jefferson County, Ala., 517 U.S. 793, 803, 116 S. Ct. 1761, 1768, 135 L. Ed.2d 76 (1996)). In actions of this character, the Court said, "we may assume that the States have wide latitude to establish procedures . . . to limit the number of judicial proceedings that may be entertained." Id.

Utah stopped short of contending that all of the actions brought by beneficiaries of the Fund fall within the category described in Richards, arguing

-41-

instead that the claims related to the Fund are "in the nature of" a taxpayer suit. Although the beneficiaries of the Fund share a common interest in the Fund, it does not appear that this interest is shared in common with the public or indeed, even with the Navajo Nation Tribe. Even if this case were construed as a public right action, however, the Taylor Court clarified that Richards merely stated that, "for the type of public-law there envisioned, States are free to adopt procedures limiting repetitive litigation." Taylor, 128 S. Ct. at 2177 (citing Richards, 517 U.S. at 803, 116 S. Ct. at 1768). Thus, the Court declined to impose judicial constraint through the application of the common law of claim preclusion. Id. Any risk of vexatious repetitive lawsuits does not justify departing from the established rules of nonparty preclusion. Id. at 2178.

Recognizing the futility of its virtual representation argument, Utah recasts its claim that nonparty preclusion is justified under the pre-existing substantive legal relationship exception. The district court considered a similar question in addressing the whether an express or legal relationship was a prerequisite to a virtual representation claim. Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, assignee and assignor, guardian and ward and trustee and beneficiary. Richards, 517 U.S. at 798, 116 S. Ct. at 1766; Restatement (Second) of Judgments §§ 43-44, 52, 55. "These exceptions originated 'as much from the needs of property law as from the values of preclusion by judgment.'" Taylor, 128 S. Ct. at 2172 (quoting 18A

-42-

Wright & Miller, Federal Practice and Procedure § 4448 (2d ed. 2002)).  Utah

contends that the substantive legal relationship at issue in this case is that of co-

beneficiaries of the Fund.

We disagree with Utah's characterization of the Fund beneficiaries'

relationship.  As recognized by the district court, a substantive legal relationship

as contemplated by the exception is one in which the parties to the first suit are

somehow accountable to nonparties who file a subsequent suit raising identical

issues.  Utah has never alleged a fiduciary, contractual or property relationship

between current and prior litigants.  Indeed, Utah continues to argue, as it did in

support of its theory of virtual representation that the beneficiaries of the Fund do

not hold individual or collective property rights; instead, they share an

indivisible, collective interest in the trust corpus, and any obtainable remedy

benefits all beneficiary class members.  Such concurrent property relationships do

not justify nonparty preclusion.  See 18A Wright & Miller, supra § 4461

(explaining the general rule that such concurrent relationships do not justify

nonparty preclusion, but are likely to provide better justification for a virtual

representation analysis than most other circumstances).

There is nothing in the record to support a finding that any Fund

beneficiary was authorized to bring suit or was in any way accountable to any

other co-beneficiary, except as representatitves within the context of the class

actions.  Instead, it appears that the Bigman plaintiffs were mere self-appointed

-43-

volunteers without authority to bind any other beneficiaries by litigation.  Such an elastic concept of privity violates due process of law.  <u>Richards</u>, 517 U.S. at 804-05.

## V.    CONCLUSION

We AFFIRM the district court's order finding that Beneficiaries' claim in <u>Pelt</u> is not precluded by the judgments in <u>Sakezzie</u>, <u>Jim</u>, or <u>Bigman</u>.  The case is REMANDED for proceedings consistent with this opinion.  Utah's motion for supplemental oral argument is DENIED.