The **WHITE MOUNTAIN APACHE TRIBE, Plaintiff,**

v.

**William P. CLARK, et al., Defendants.**

**No. CIV 83–2045 PCT CAM.**

United States District Court,
D. Arizona.

Oct. 12, 1984.

Russell A. Kolsrud, Asst. Atty. Gen., Phoenix, Ariz., for Corbin.

G. Eugene Neil, Phoenix, Ariz., for Goodfarb.

Richard S. Allemann, Asst. U.S. Atty., Phoenix, Ariz., and Pauline H. Milius, U.S. Dept. of Justice, Washington, D.C., for federal defendants.

## ORDER

MUECKE, Chief Judge.

Having received and considered Plaintiffs' Complaint for Declaratory Judgment and for Permanent Injunction, filed October 20, 1983; Federal Defendants' Motion to Dismiss, filed February 9, 1984; Plaintiffs' Response to Motion to Dismiss, filed March 30, 1984; Defendants' Reply Memorandum in Support of Federal Defendants' Motion to Dismiss, filed April 10, 1984; Federal Defendants' Supplemental Memorandum in Support of Motion to Dismiss, filed June 14, 1984; Plaintiffs' Memorandum Pursuant to May 11, 1984 Order, filed June 21, 1984; Federal Defendants' Final Memorandum in Support of Motion to Dismiss, filed July 16, 1984; and Plaintiffs' Response to Federal Defendants' Supplemental Memorandum, filed July 16, 1984; and having heard oral argument on the Motion on April 16, 1984, this Court finds and concludes as follows:

This action is a continuation of a long history of disputes between the United States Government and Indian Tribes located in the various states across the country. Many of these claims, including the one before this Court, consist of alleged wrongs inflicted upon the tribes since the time pioneers first ventured across the Western Plains. While it is clear that the Indians were previously quite limited in their access to the judicial system to seek redress for these wrongs, times have indeed changed.

In 1946, Congress created the Indian Claims Commission and vested it with jurisdiction "[b]road enough to include all possible claims." Act of August 13, 1946, Pub.L. No. 726, 1946 U.S.Code Cong.Serv. (60 Stat.) 1347, 1355 (hereinafter cited as *Congressional Comments*). The language of the Act, 60 Stat. 1049; 25 U.S.C. § 70 *et seq.* (1976), illustrates the breadth of the jurisdiction:

Sec. 2. The Commission shall hear and determine the following claims against the United States on behalf of any Indian tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska: (1) claims in law or equity arising under the Constitution, laws, treaties of the United States, and Executive orders of the President; (2) all other claims in law or equity, including those sounding in tort, with respect to which the claimant would have been entitled to sue in a court of the United States if the United States was subject to suit; (3) claims which would result if the treaties, contracts, and agreements between the claimant and the United States were revised on the ground of fraud, duress, unconscionable consideration, mutual or unilateral mistake, whether of law or fact, or any other ground cognizable by a court of equity; (4) claims arising from the taking by the United States, whether as the result of a treaty of cession or otherwise, of lands owned or occupied by the claimant without the payment for such lands of compensation agreed to by the claimant; and (5) claims based upon fair and honorable dealings that are not recognized by any existing rule of law or equity.

It is obvious that Congress intended to cover *all* claims: "If any class of claims is omitted, we may be sure that sooner or later that omission will lead to appeals for new special jurisdictional acts." *Congressional Comments, supra,* at 1355–1356.

Therefore, based upon the grant of jurisdiction in the Act as well as its legislative history, all claims arising prior to 1946 were to have been brought before the Indian Claims Commission or were forever barred. See 60 Stat. 1049, 1052. The above discussion is dispositive of one of the issues before this Court.

Plaintiff makes several allegations in its complaint. First, the Tribe claims that the Secretary of Agriculture has refused to restore approximately 14,000 acres to which it believes it is entitled.

The White Mountain Apache Reservation was granted to the Tribe by Executive Orders on November 9, 1871 and December 12, 1872. The northern boundary of the reservation borders what are now the Sitgreaves and Apache National Forests. In 1887, Deputy Surveyor C. Wallace, under contract with the United States Government, surveyed the area, thereby delineating the boundary of the reservation. The reservation, as originally defined by the above orders, was reduced several times after its creation by various Executive Orders until the early 1900's.

Plaintiff here alleges that the Wallace Survey of 1887 erroneously excluded from the reservation 14,000 acres of land, which is now National Forest area. As previously mentioned, the Indian Claims Commission was created in 1946 for the express purpose of providing a forum for all Indian grievances against the Federal Government.

In 1959, Plaintiff availed itself of this opportunity to seek redress for the previous alleged wrongs committed upon the Tribe by the United States; namely, the loss of properties contained within and without the present White Mountain Apache Reservation (*see* Plaintiffs' Complaint filed before the Indian Claims Commission, hereinafter referred to as "Docket No. 22–D", attached as Exhibit 1 to Federal Defendants' Supplemental Memorandum in Support of Federal Defendants' Motion to Dismiss, filed June 14, 1984). Shortly thereafter, Plaintiff filed a second action alleging trespass and mismanagement, and requested an accounting (see Exhibit 4, attached to Federal Defendants' Supplemental Memorandum in Support of Federal De-

fendants' Motion to Dismiss, filed June 14, 1984, hereinafter referred to as "Docket No. 22–H"). This second action has survived the extinguishment of the Indian Claims Commission and is presently pending in the United States Claims Court.

Subsequent to the filing of the two complaints before the Indian Claims Commission, Plaintiffs requested a reconsideration of the boundary lines of the reservation, as described in the allegedly erroneous Wallace Survey. In a memorandum dated June 12, 1967, the Solicitor for the Department of the Interior reviewed this request and after thorough examination, determined that the survey "accurately delineated" the boundary of the reservation and found "no 'gross error' requiring a resurvey." Appendix C, attached to Plaintiffs' Complaint, filed October 20, 1983.

With knowledge of that ruling, Plaintiff continued to pursue its claims in Docket No. 22–D without specific mention of the Wallace Survey boundary dispute. The Indian Claims Commission issued Findings of Fact and an Order in Docket No. 22–D on June 27, 1969. In its Order, the Commission stated, *inter alia,* the following conclusions of law:

4. That on May 1, 1873, the United States extinguished, without the payment of compensation, said Indian title to the lands exclusively used and occupied by the Western Apache Indians outside the enlarged White Mountain Indian Reservation established by the Executive Orders of November 7, 1871, and December 14, 1872.

5. That by the Executive Orders of August 5, 1873, July 21, 1874, April 27, 1876, January 26, 1877, March 31, 1877, and December 22, 1902, the United States successively extinguished, without the payment of compensation, said Indian title to lands exclusively used and occupied by the Western Apache Indians inside the said enlarged White Mountain Indian Reservation as of the above dates.

6. That under Sec. 2(4) of the Indian Claims Commission Act plaintiffs are entitled to recover from the defendant on behalf of the Western Apache Indians the fair market value of the area set forth in Finding of Fact No. 11 as of the dates when said Indian title was extinguished by the United States.

Interlocutory Order, June 27, 1969; page 221 of Exhibit 3 attached to Reply Memorandum in Support of Federal Defendants' Motion to Dismiss, filed April 10, 1984.

In order to make this Finding, the Commission necessarily had to focus upon the very Wallace Survey boundary that is at issue in this action. Subsequent to this order, the parties reached in 1972 a Stipulation for Entry of Final Judgment, which provided the Tribe with a settlement in the amount of $4.9 million.

Plaintiff argues here that a taking of the area in dispute could not have occurred solely on the basis of an erroneous survey, and as such, it was not, and could not have been, the subject of a claim before the Indian Claims Commission. Plaintiffs' position is unsound. The Indian Claims Commission did rule that there had been a taking of all lands lying outside of the boundary of the reservation. Conclusion of Law # 4, Interlocutory Order, June 27, 1969, *supra.* That boundary *is* the Wallace Survey boundary. Memorandum of Solicitor, *supra.* Plaintiff did not challenge the Solicitor's ruling in its Docket No. 22–D action. If Plaintiff disagreed with that ruling, the Tribe had knowledge thereof, and could and should have raised the issue in their Docket No. 22–D action. The legislative history of the Indian Claims Commission Act clearly illustrates that the Commission was created expressly for the resolution of the type of claim Plaintiff attempts to raise here:

Some Indian claims go back many years in their origins, but the years do not always wipe out past mistakes. Thus, in 1894, a boundary line was drawn around the Warm Springs Reservation in Oregon which was supposed to define accurately the lands guaranteed to the Indians by treaty in 1855. A mistake was made in drawing this line. The result is that there is a piece of national

forest which is outside the Indian boundary that should be inside the Indian boundary. There is no dispute about the facts. The Indians look over the erroneous boundary line to the timber and grass on the land that was promised them. The fact that the error was made many years ago does not make the present generation of Indians any less eager to correct a mistake which the Federal Government admits it made but for which no adequate judicial remedy has yet been provided.

*Congressional Comments, supra,* at 1351.

The Act clearly contemplates, and in fact demands the submission of such claims to the Indian Claims Commission. Plaintiffs brought their claims before the Commission in Docket No. 22–D as well as Docket No. 22–H, just as Congress had intended.

Further, and most significantly, the Stipulation for Entry of Final Judgment in Docket No. 22–D provided that:

> 3. Entry of final judgment in said amount shall finally dispose of *all* rights, claims or demands which the plaintiffs have asserted or *could have asserted* with respect to the subject matter of the suit in Docket No. 22–D, and plaintiffs shall be barred thereby from asserting any such rights, claims or demands against defendant in any other or future action.

Findings of Fact on Compromise Settlement, September 12, 1972; p. 402 of Exhibit 2, attached to Reply Memorandum in Support of Federal Defendants' Motion to Dismiss, filed April 10, 1984 (emphasis added).

In reaching their settlement, Plaintiff relied upon the allegedly erroneous boundary in obtaining a $4.9 million settlement; it should now be held to such a boundary by its own stipulation as well as under the principles of res judicata.

■ In summary, the Indian Claims Commission was created for the purpose of hearing *all* Indian grievances arising prior to 1946. The boundary dispute presently before this Court is exactly the type of claim Congress intended the Commission to hear. The present claim arose from a survey occurring in 1887. Plaintiff was not unaware of this boundary dispute during the pendency of its Docket No. 22–D action, as is evidenced by its request for a decision on the matter by the Solicitor for the Department of the Interior. Neither the findings by the Commission nor the stipulation entered into by the parties reflect any dispute by Plaintiff in regard to the boundary of the reservation. Any claims concerning this boundary could and should have been brought in that action. Furthermore, Plaintiff agreed to accept $4.9 million which disposed of "all rights, claims or demands which [the Tribe] asserted or could have asserted...." Plaintiff is barred from bringing this action in Federal Court.

Based upon the above discussion, this Court will grant Defendants' Motion to Dismiss as to the portion of Plaintiff's Complaint concerning the 14,000 acres. Plaintiff's request for injunctive relief to prevent further trespass is therefore denied as moot.

Plaintiff further alleges in its Complaint that the Secretary of the Interior and other federal government officials are unable to adequately represent the Tribe in its water adjudication in the state court due to a conflict of interest between the Government's representation of the Tribe's interest and the representation of the various federal reclamation projects. They allege that the conflict of interest has resulted in gross mismanagement of the reservation by the Secretary of the Interior, causing serious damage to their lands.[1]

---

1. In Docket No. 22–H, a pending Court of Claims action, Plaintiff has brought a claim for monetary damages based upon almost identical allegations as those presented herein. The similarity of the claims is reflected in Exhibit 2, attached to the Supplemental Memorandum in Support of Federal Defendants' Motion to Dismiss, filed June 14, 1984, which consists of the Response of Plaintiff White Mountain Apache Tribe to Interrogatories Submitted by Defendant United States of America, filed in Docket No. 22–H. Plaintiff there states:

■ The above issue is well-settled. Two recent decisions by the United States Supreme Court clearly reject any notion of such a conflict of interest. In *Nevada v. United States*, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983), the Court stated: "The Government does not 'compromise' its obligation to one interest that Congress obliges it to represent by the mere fact that it simultaneously performs another task for another interest that Congress had obligated it by statute to do." *Id.* at 2906. *See also Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 1396, 75 L.Ed.2d 318 (1983). Thus, Plaintiff has failed to state a sufficient claim upon which relief may be granted regarding any alleged mismanagement due to a conflict of interest in representation by the Government.

The above-cited cases are also germane to the question of Plaintiff's request for an injunction preventing the United States Attorney General from representing the Tribe (as is this official's duty) in state water adjudications. Plaintiff argues that adequate representation of their water rights is not possible due to a conflict of interest.

The Plaintiff Tribe has previously attempted to bar such representation by filing an action in the United States District Court for the District of Columbia. The Court determined that no statute exists under which the Court could exercise jurisdiction over the Attorney General's exercise of litigating judgment. This decision was affirmed by the Court of Appeals of that circuit in *White Mountain Apache Tribe v. Smith*, 675 F.2d 1341 (D.C.Cir. 1982), cert. denied, *White Mountain Apache Tribe v. Smith*, —— U.S. ——, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983). Based upon the decisions in *Nevada v. United States, supra,* and *Arizona v. California, supra,* regarding conflicts of interest, as well as the decision in the District Court for the District of Columbia which rejected Plaintiff's previous attempt to prevent such representation, that portion of Plaintiff's Complaint requesting injunctive relief prohibiting representation by the Attorney General of the Indian water rights in the state adjudication is dismissed.

■ In regard to Plaintiff's final claim that the state court has no jurisdiction to adjudicate its federally reserved water rights, this Court awaited the ruling in *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983), prior to deciding the case at hand. In that case, the U.S. Supreme Court held:

[A]ssuming that the state adjudications are adequate to quantify the rights at issue in the federal suits, and taking into account the McCarran Amendment policies we have just discussed, the expertise and administrative machinery available to the state courts, the infancy of the federal suits, the general judicial bias against piecemeal litigation, and the convenience to the parties, we must conclude that the District Courts were correct in deferring to the state proceedings.

*Id.* at 3215.

This Court, in its Order of May 11, 1984, requested that the parties file supplemental briefs discussing the adequacy of the state court proceedings in adjudicating federal water rights, a question left open by the U.S. Supreme Court in *Arizona v. San Carlos, supra,* 103 S.Ct. at 3215, n. 20. Having considered those briefs, this Court

To each question, Plaintiff Tribe makes an affirmative reply. Yet the inquiries fail to approach the real issue presented here: Is the United States Trustee liable for the destruction, through its maladministration, of the once fine grazing lands and for the sheet and gully erosion endemic throughout the White Mountain-Fort Apache Indian Reservation which is literally being washed away due to the malfeasance of the Trustee?

The Tribe refers to the law set forth above and declares that there is an absolute liability owing to Plaintiff Tribe which carries with it two obligations: (1) to pay monetary damages for the continuing wrongs, and (2) to rehabilitate and restore the Reservation, all in keeping with the Covenant entered into between Plaintiff Tribe and Vincent Colyer.

In view of the similarity of these claims with those presently before this Court, dismissal of this action does not leave Plaintiff without a possibility of recovery for such claims.

will follow the mandate of the U.S. Supreme Court and the Ninth Circuit Court of Appeals by dismissing this action in favor of a state court determination of jurisdiction. In *Northern Cheyenne Tribe v. Adsit*, 721 F.2d 1187 (9th Cir.1983), the Ninth Circuit cited and applied the Supreme Court's ruling in *Arizona v. San Carlos, supra,* in stating:

> The question of jurisdiction under state law is one to be definitively resolved by the state courts, as the Supreme Court has held. *Id.* [103 S.Ct.] at 3210; *see also id.* at 3215 n. 21 (contemplating a state court ruling on the jurisdictional question). Any state court desiring to adjudicate Indian water rights would of necessity rule on its jurisdiction to do so; there is thus no need for us, or the district court, to reach that issue. Moreover, the question of adequacy of the state proceedings is one best decided by the state courts in the first instance. This course of actions seems to be what the Court contemplated when it stated, 'State courts, as much as federal courts, have a solemn obligation to follow federal law. Moreover, any state court decision alleged to abridge Indian water rights protected by federal law can expect to receive ... a particularized and exacting scrutiny....' *Id.* at 3216. We therefore will not consider the question of adequacy prior to conclusion of the state court proceedings, and we instruct the district courts to do the same.

*Id.* at 1188. While it is apparently undecided whether the Tribe will have future access to the federal district court for the purposes of contesting the state court's adjudication, *see Arizona v. San Carlos Apache Tribe of Arizona, supra,* 103 S.Ct. at 3220 (Stevens, J., dissenting), which point of view does not specifically seem to have been disposed of by the majority opinion, the majority opinion in that case did state: "[R]esort to the federal forum should remain available if warranted by a significant change of circumstances, such as, for example, a decision by a state court that it does not have jurisdiction over some or all of these claims after all." *Arizona v. San Carlos Apache Tribe of Arizona, supra,* 103 S.Ct. at 3215, n. 20.

Pursuant to the mandate set forth in *Northern Cheyenne, supra,* as well as the decision in *Arizona v. San Carlos Apache Tribe of Arizona, supra,* this Court will dismiss Plaintiff's Complaint as to its allegations of lack of jurisdiction in the state court to make determinations concerning federal water rights. Plaintiff may, if it so chooses, attempt to adjudicate such claims of inadequacy before the state tribunal.

In conclusion, this Court will dismiss Plaintiff's Complaint in its entirety, thereby granting Federal Defendants' Motion to Dismiss.

Based upon the foregoing:

IT IS ORDERED that the Federal Defendants' Motion to Dismiss, filed February 9, 1984 is granted. Plaintiff's Complaint, filed October 20, 1983, is dismissed.